UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ELLIOTT ARTHUR LEWIS,

        Petitioner,

v.                                      Case No. 3:17-cv-468-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Elliott Lewis, an inmate of the Florida penal system, initiated this action on April 7, 2017,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1) in the United States District Court Northern District of Florida. The Northern District transferred the case to this Court on April 19, 2017. See Doc. 5. In the Petition, Lewis challenges a 2013 state court (Putnam County, Florida) judgment of conviction for the sale of oxycodone. Lewis raises four grounds for relief. See Petition at 13-47.[2] Respondents have submitted an answer in opposition to the Petition. See Response to Petition (Response; Doc. 18) with exhibits (Resp. Ex.). Lewis filed a brief in reply. See Petitioner's Reply to State's Response to Petition and Renewed Request for an Evidentiary Hearing (Reply; Doc. 18). This case is ripe for review.

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On May 28, 2013, the State of Florida (State) charged Lewis in an amended Information with trafficking in oxycodone. Resp. Ex. A. Lewis proceeded to a jury trial, at the conclusion of which the jury found Lewis guilty of the lesser-included offense of the sale of oxycodone. Resp. Ex. M. On August 13, 2013, the circuit court adjudicated Lewis as a habitual felony offender (HFO) and sentenced him to a term of incarceration of thirty years in prison. Resp. Ex. N. The circuit court further ordered that the sentence would run concurrently to any active sentences being served at the time. Id.

Lewis appealed his conviction and sentence to Florida's Fifth District Court of Appeal (Fifth DCA). Resp. Ex. P. Lewis' appellate counsel filed an Anders[3] brief. Resp. Ex. Q. The State did not file an answer brief. Resp. Ex. R. On December 9, 2014, the Fifth DCA affirmed Lewis' conviction and sentence per curiam, without issuing a written opinion, Resp. Ex. S, and issued the Mandate on January 2, 2015. Resp. Ex. T.

On December 4, 2015, Lewis filed a petition for writ of habeas corpus with the Fifth DCA, arguing his appellate counsel was ineffective for failing to argue that the circuit court considered inappropriate factors at sentencing. Resp. Ex. U. The State filed a response in opposition to Lewis' habeas petition, Resp. Ex. V, and Lewis filed a reply brief, Resp. Ex. W. The Fifth DCA denied the habeas petition on February 1, 2016. Resp. Ex. X. Lewis filed a motion for rehearing, Resp. Ex. Y, which the Fifth DCA denied on February 25, 2016. Resp. Ex. Z.

On April 29, 2015, Lewis filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. AA. In the Rule 3.850

---

[3] Anders v. California, 386 U.S. 738 (1967).

Motion, Lewis asserted the following grounds for relief:  (1) counsel erred in presenting a duress defense instead of an entrapment defense; (2) the State committed a <u>Brady</u>[4] violation; (3) counsel failed to call three witnesses; (4) counsel failed to timely request an in-camera hearing to make the State disclose the identity of its confidential informant; (5) counsel failed to object to the circuit court's use of allegedly improper sentencing factors; (6) counsel failed to investigate Lewis' claim he was mentally incompetent at the time of trial; (7) counsel failed to object to the circuit court's allegedly improper limitation of voir dire; (8) counsel failed to question and strike a prospective juror; (9) counsel failed to question a prosecutive juror; and (10) the cumulative impact of counsel's errors prejudiced him. <u>Id.</u> On May 19, 2016, the circuit court denied the Rule 3.850 Motion. Resp. Ex. DD. Lewis moved for rehearing, Resp. Ex. EE, which the circuit court denied on June 21, 2016. Resp. Ex. FF. On November 29, 2016, the Fifth DCA per curiam affirmed the denial of the Rule 3.850 Motion, without a written opinion. Resp. Ex. LL. Lewis filed a motion for rehearing, Resp. Ex. MM, which the Fifth DCA denied on January 9, 2017. Resp. Ex. NN. The Fifth DCA issued the Mandate on January 30, 2017. Resp. Ex. OO.

### III. One-Year Limitations Period

This Petition was timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a

---

[4] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Lewis'] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr.,

828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that

reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[5] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

---

[5] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

### B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "''opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v.

7

> Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S.  838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[6] supra, at 747–748, 111 S. Ct. 2546; Sykes,[7] supra, at 84–85, 97 S. Ct. 2497.  A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

---

[6] Coleman v. Thompson, 501 U.S. 722 (1991).
[7] Wainwright v. Sykes, 433 U.S. 72 (1977).

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[8] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

---

[8] Murray v. Carrier, 477 U.S. 478 (1986).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some

> conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Lewis alleges that the State committed a Brady violation when it willfully withheld police agency files on two confidential informants, Lee Hall and Gregory Williams. Petition at 15-27. According to Lewis, he needed their files to help formulate an entrapment defense and demonstrate outrageous conduct on the part of law enforcement and their agents. Id. at 20. That conduct included Hall orchestrating and observing a drug sale between Lewis and police, preying on Lewis' addiction, and constant threats of gun violence. Id. at 21. Lewis contends that the files would have demonstrated that law enforcement approved of or acquiesced to Hall and Williams trafficking in drugs and their use of coercive arrangements with vulnerable addicts, such as Lewis. Id. Lewis maintains the State purposely withheld this information and did not call Hall as a witness in order to goad the defense into calling him. Id. at 24. According to Lewis, had these files been disclosed, he would have been able to show a larger "sponsorship" conspiracy[9] and that

---

[9] In the Petition, Lewis avers that Hall and Williams "sponsored" addicts to visit doctors, obtain prescription pills, and sell those pills. Petition at 5-10. He explains that Hall and Williams would drive their "sponsorees" to Dr. Sachs' office in South Florida,

he was entrapped. Id. at 24-25. In support of his arguments, Lewis relies on <u>Roviaro v. United States</u>, 353 U.S. 53 (1957).

Lewis raised a substantially similar claim in his Rule 3.850 Motion. Resp. Ex. AA at 16-21. The circuit court rejected the claim, explaining in pertinent part:

> The Defendant claims that there was some kind of "confidential informant file" relating to confidential informant Lee Hall. Before and during trial, the State continually asserted that the [sic] no such file existed. It was repeatedly asserted by the Palatka Police Department and the Florida Department of Law Enforcement (FDLE) that there was no confidential informant file kept in relation to Lee Hall. During Trial, the Defense called Detective Brad Forsythe [sic] who testified that Lee Hall was working as a "cooperating defendant" for FDLE at the time of the Defendant's drug sale. He further testified that that [sic] FDLE only keeps confidential informant files on "paid informants" in order to track the money being spent by the Department, but does not keep files on "cooperating informants". It would appear that there was no "confidential informant file".
>
> The Court agrees here from a review of the record, that if in fact, the Defense was repeatedly seeking the alleged "confidential informant file" to impeach confidential informant and witness Lee Hall, it would appear that it would not likely would [sic] have had an effect on the proceedings as there was enough to impeach Hall on. It is not at all clear that the Defendant was prejudiced here. Ground Two is denied.

Resp. Ex. DD at 3-4 (record citations omitted). The Fifth DCA per curiam affirmed the denial of relief on this claim without issuing a written opinion. Resp. Exs. LL; OO.

---

then drive them back up to North Florida and fill their prescriptions at the Extended Care Pharmacy in Hastings, Florida. Id. However, Lewis contends both Hall and Williams were also confidential informants who would coerce their "sponsorees" to sell drugs to undercover officers, take the money from the sales, and buy more drugs with it. Id.

To the extent that the Fifth DCA decided the claim on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Lewis is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, the claim in Ground One is without merit. The United States Supreme Court decision in Brady governs a state's withholding of exculpatory evidence. To establish a Brady claim, a petitioner must demonstrate: (1) the government possessed evidence favorable to the defendant; "'(2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different.'" Riechmann v. Fla. Dep't of Corr., 940 F.3d 559, 580 (11th Cir. 2019) (quoting United States v. Stein, 846 F.3d 1135, 1145-46 (11th Cir. 2017)). Notably, the holding in Brady only applies to information in the possession of the prosecutor or anyone under his authority that defense counsel could not have obtained by exercising reasonable diligence. United States v. Naranjo, 634 F.3d 1198, 1212 (11th Cir. 2011); United States v. Griggs, 713 F.2d 672,

---

[10] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

674 (11th Cir. 1983) ("Where defendants, prior to trial, had within their knowledge the information by which they could have ascertained the alleged <u>Brady</u> material, there is no suppression by the government."). And, "a <u>Brady</u> claim fails when it is only speculative that the materials at issue would have led to exculpatory information." <u>Wright v. Sec'y Fla. Dep't of Corr.</u> 761 F.3d 1256, 1281 (11th Cir. 2014).

The United States Supreme Court has held that the government has a limited privilege to withhold from disclosure the identity of confidential informants. <u>Roviaro</u>, 353 U.S. at 59. However, "once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." <u>Id.</u> at 60. Additionally, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." <u>Id.</u> at 60-61.

Here, the record reflects that on January 10, 2013, Lewis' counsel filed a motion for disclosure of informant and informant files. Resp. Ex. F. The circuit court held hearings on the motion on April 1, 2013, and April 8, 2013. Resp. Exs. H; I. At the April 1, 2013 hearing, defense counsel already knew the identity of the informants, but wanted any documentation that law enforcement had on them as well as the policy and procedures regarding the handling of confidential informants. Resp. Ex. H at 8, 16. The State represented that the policies and procedures could be obtained via a public records request and that the Florida Department of Law Enforcement (FDLE) and the Palatka Police Department (PPD) did not have a case file on Hall because he was a cooperating defendant, not a paid informant, as such their policy did not require formal documentation. <u>Id.</u> at 17, 20-23. The State further represented that it had every case that Hall had worked

on but did not turn that information over in discovery because prosecutors viewed it as irrelevant and a fishing expedition. Id. at 21. During the April 8, 2013 hearing, the State again represented it had a list of the controlled buys in which Hall participated. Resp. Ex. I at 7-8. The circuit court thought the defense's request was a fishing expedition and did not see the relevance of how law enforcement handled Hall in previous cases, despite hearing defense counsel's duress and entrapment arguments. Id. at 10-13, 18. However, the circuit court allowed the defense to re-depose the undercover officer and ask him about the handling of Hall and any documentation of Hall. Id. at 20-21.

On May 22, 2013, counsel filed a renewed motion to disclose informant information and to depose Hall prior to trial. Resp. Ex. J. The circuit court addressed this motion at a May 23, 2013 hearing. Resp. Ex. K. At that hearing, defense counsel stated that he thought the local sheriff's office had records on Hall. Id. at 3. The circuit court then told the parties to call the sheriff's office to see if such records existed. Id. at 4. According to defense counsel, he re-deposed the undercover officer, but the officer would not discuss Hall or the file. Id. at 4-5.

The day of trial, defense counsel again sought to obtain documentation on Hall, representing to the circuit court that he took Hall's deposition, during which Hall said he signed papers for two agencies. Resp. Ex. L at 4. The prosecutor said there was no file with FDLE or PPD, and that she did not check with the sheriff's office because the sheriff's office had no role in the undercover controlled-buy. Id. at 7-10. The circuit court denied the defense's request for the files. Id. at 11-12.

At trial, the defense called Hall's handler, Brad Forsyth, as a witness. Id. at 63, 167-68. Forsyth was an officer with the PPD assigned to the FDLE's Tri-County High

Intensity Drug Trafficking Area Task Force (Tri-County Task Force). Id. at 168. Forsyth explained that confidential informants either get paid or are "working off charges," i.e. cooperating defendants with pending charges that work as confidential informants to lessen their potential punishment. Id. at 171. Hall was the latter type of confidential informant. Id. at 197, 204. According to Forsyth, FDLE policy was to document only paid informants, not cooperating defendants. Id. at 174-75. He further stated that the cooperation agreement between the different localities and agencies in the Tri-County Task Force made it difficult to document whether an informant worked for local law enforcement or for the FDLE as part of the task force. Id. at 174, 201. As such, he testified there was no file with the FDLE that he was aware of, although defense counsel elicited testimony from Forsyth that in his deposition he had stated that he documented everything Hall did for the PPD. Id. at 175, 192-93, 195. On cross-examination, Forsyth explained that PPD does create confidential informant files. Id. at 203-04. He also clarified that he mistakenly stated in his deposition that Hall was a confidential informant for PPD when he was actually an FDLE informant. Id. at 205. Forsyth explained that after his deposition, he was asked to produce Hall's PPD file, but when he searched for it he realized that Hall was an FDLE informant. Id. Nevertheless, he did state that he personally documented on his computer all the cases in which he used Hall as an informant. Id.

The defense also called Hall to testify at trial. Id. at 233-60. According to Hall, when he first became a cooperating defendant for the PPD, his handler was John Merchant. Id. at 233-36. Eventually Forsyth and Travis Smith took over. Id. at 236-37. Hall testified that as far as paperwork, he filled out one sheet of paper that informed him of what he could and could not do as an informant and policies for controlled buys. Id. at 237.

This evidence reflects that while Hall may have served as a confidential informant for both the PPD and FDLE, for purposes of the controlled buy Lewis participated in, Hall was working as a confidential informant for FDLE. Both pre-trial and during trial, the State and relevant law enforcement officers represented that there was no official file on Hall. And, Hall himself testified that he filled out a single piece of paper, that did not document anything of relevance to the underlying charge in Lewis' criminal case or any defense he might have raised to that charge. Lewis has not presented any evidence, let alone clear and convincing evidence, that refutes the law enforcement officers' representations. As such, Lewis has failed to establish that the government even possessed this evidence, let alone suppressed it. See Riechmann, 940 F.3d at 580.

To the extent Lewis sought information regarding other cases on which Hall worked as a confidential informant, those cases were not relevant to Lewis' charged offense. The State represented pretrial that it had information on the cases Hall worked, but that it did not want to turn it over and the circuit court agreed, reasoning it was a fishing expedition. Resp. Ex. I at 10-11, 18. Lewis' assertion in his Petition that this information was necessary to uncover a larger conspiracy does not make it relevant to his specific case or defense. As to a duress defense, Lewis presented his own testimony and the testimony of another witness that alleged Hall coerced and threatened Lewis to sell his prescription drugs. Resp. Ex. L at 136-59, 267-318. To the extent Lewis argues Hall's action in other cases he worked as a confidential informant would establish similar fact evidence to prove intent or a plan, his argument is based purely on speculation. He assumes, without proof, that had he been able to review these other cases he would have found evidence of Hall's wrong-doing. However, mere speculation that something might

lead to exculpatory information is insufficient to establish a Brady violation. See Wright 761 F.3d at 1281. Accordingly, Lewis' Brady claim fails on this basis as well.

To the extent Lewis sought information on the other confidential informant that allegedly conspired with Hall, the Court finds that Lewis has failed to establish Williams' relevancy to his case in light of the fact that there is no evidence suggesting that Williams was in any way associated with the controlled-buy at issue here. Moreover, his assertions of a Brady violation based on the failure to disclose Williams' file suffers from the same deficiencies as Lewis' argument concerning Hall's files. For these reasons, the Court finds that the State did not commit a Brady violation; therefore, relief on the claim in Ground One is due to be denied.

### B. Ground Two

In Ground Two, Lewis avers that he was denied due process because his conviction was the result of objective entrapment. Petition at 29-34. Lewis argues that objective entrapment took place because but for Hall and Williams initiating contact with him, suggesting the criminal enterprise, and supplying the funding and knowledge necessary to commit the crime, he would not have committed this offense. Id. at 29, 31. According to Lewis, Hall and Williams were law enforcement agents that entrapped him by supplying him with narcotics and introducing him to an undercover officer as a prospective buyer. Id. at 33. Lewis maintains the government's action in either allowing or acquiescing to Hall and Williams' conduct was so outrageous that it violated his right to due process of law. Id. at 34.

Respondents contend that Lewis never raised this claim in the state court system; therefore, it is unexhausted. Response at 9-12. In his Reply, Lewis acknowledges he did

not present this claim in state court, but argues that good cause and prejudice exist to excuse this procedural default. Reply at 41-45. According to Lewis, cause exists because section 914.28(8), Florida Statutes (2011), prevented him from raising this claim in any state motion or legal proceeding. Id. at 43. Lewis asserts that prejudice exists because law enforcement violated his due process rights through entrapment. Id. at 44-45.

Florida Statutes section 914.28 governs the use of confidential informants in criminal cases and directs the implementation of policies and procedures. Pursuant to section 914.28(8):

> The provisions of this section and policies and procedures adopted pursuant to this section do not grant any right or entitlement to a confidential informant or a person who is requested to be a confidential informant, and <u>any failure to abide by this section may not be relied upon to create any additional right, substantive or procedural, enforceable at law by a defendant in a criminal proceeding</u>.

§ 914.28(8), Fla. Stat. (2011) (emphasis added). A plain reading of this statute reflects that a criminal defendant would have no additional right enforceable at law if law enforcement or confidential informants did not follow the policies and procedures enumerated in the statute. However, the Constitution, not a statute, creates a defendant's right to due process of law. Therefore, this statute does not prevent a criminal defendant from raising an entrapment or due process argument in state criminal proceedings. Accordingly, Lewis' contention that section 914.28(8) prohibited him from raising this claim is without merit, and, therefore, he has failed to establish cause to overcome his failure to exhaust this claim. As such, relief on the claim in Ground Two is due to be denied as the claim is procedurally defaulted.

Nevertheless, even assuming Lewis properly exhausted this claim, he is not entitled to federal habeas relief. The objective entrapment defense does not arise from the United States Constitution but is a creation of Florida law. Lewis has not identified any clearly established federal law stating that there is a constitutional right to dismiss a case based on objective entrapment. Likewise, the Court is aware of no such clearly established federal law. See Sairras v. Fla. Dep't of Corr., 496 F. App'x 28, 35 (11th Cir. 2012) (citing United States v. Russell, 411 U.S. 423, 433 (1973)) ("It is well-settled that the defense of entrapment is not of constitutional dimension."); McFadden v. DOC and Florida Attorney General, No. 2:14-cv-128-FtM-38MRM, 2016 WL 6822451, *5-*6 (M.D. Fla. November 18, 2016) (reviewing cases to determine that the United States Supreme Court has never found a constitutional basis for an objective entrapment defense). Accordingly, Lewis is not entitled to federal habeas relief on this claim. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (holding errors of state law are not cognizable in federal habeas review); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Quince v. Crosby, 360 F.3d 1259, 1261-62 (11th Cir. 2004) ("while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."). Therefore, relief on the claim in Ground Two is due to be denied.

## C. Ground Three

As Ground Three, Lewis asserts that his trial counsel was ineffective for presenting a duress defense instead of presenting an entrapment defense. Petition at 36-42. According to Lewis, the facts of his case did not support a duress defense because Lewis

was not under the immediate threat of death or serious bodily injury; instead, Hall made

a threat of future harm. Id. at 39. Additionally, Lewis asserts that he had numerous

opportunities to escape the threat of harm. Id. at 40. Lewis avers that these two facts

would have prevented him from establishing a successful duress defense and any

reasonable attorney should have known this going into trial. Id. Lewis maintains that from

the beginning he wanted his attorney to pursue an objective entrapment defense. Id. He

contends that had counsel put forth an entrapment defense, the outcome of the trial would

have been different. Id. at 41-42.

In his Rule 3.850 Motion, Lewis raised a similar ground for relief. Resp. Ex. AA at

12-16. The circuit court denied this claim, reasoning:

> Here, the State's citing McNeal v. State, 409 So. 2d
> 528 (Fla. 5th DCA 1982) is well placed. In McNeal, a Fifth
> DCA case, the Court found that Courts should not review any
> specific discretionary or judgmental act or position of Trial
> Counsel, whether tactical or strategic, on an inquiry as to
> effectiveness of counsel.
>
> A review of the record shows that that [sic] Defendant's
> own testimony at trial lends to a duress defense as well a [sic]
> witness Heather Kaminsky's testimony that the Defendant
> was threatened with a fire arm [sic] to sell Oxycodone. The
> Court agrees that the Defendant now second guesses the
> strategy in hindsight. The first prong of Strickland [sic] has not
> been met here. Ground One is denied.

Resp. Ex. DD at 2-3 (record citations omitted). The Fifth DCA per curiam affirmed the

denial of relief on this claim. Resp. Exs. LL; OO.

To the extent that the Fifth DCA decided the claim on the merits, the Court will

address the claim in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court

concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Lewis is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, the claim in Ground Three is meritless. The Court notes that "[t]he Supreme Court has mandated a highly deferential review of counsel's conduct, especially where strategy is involved," and "[i]ntensive scrutiny and second guessing of attorney performance are not permitted." Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) (citing Strickland, 466 U.S. at 689-90)). Additionally, the Eleventh Circuit has instructed that:

> Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component. The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct. By contrast, the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact, so we decide it de novo.

Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998). "In assessing an attorney's performance under Strickland, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" Knight v. Fla. Dep't of Corr., 936 F.3d 1322, 1340 (11th Cir. 2019) (quoting Strickland, 466 U.S. at 690).

In Florida, a law enforcement officer commits entrapment:

> if, for the purpose of obtaining evidence of the commission of a crime, he or she induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.

Fla. Stat. § 777.201(1). Florida courts recognize two theories of entrapment, one being "'objective entrapment,' which concerns law enforcement conduct amounting to a denial of due process," and the other being "'subjective entrapment,' which focuses on whether the defendant was predisposed to commit the crime." Jones v. State, 114 So. 3d 1123, 1126 (Fla. 1st DCA 2013). Here, Lewis relies on a theory of objective entrapment; as such, the Court will not address subjective entrapment. To establish objective entrapment, a defendant must identeify law enforcement conduct that is so outrageous that it offends decency or a sense of justice. State v. Laing, 182 So. 3d 812, 816 (Fla. 4th DCA 2016). The focus of an objective entrapment theory must be on the conduct of law enforcement officers or their agents. Id. Florida courts recognize that a common thread in objective entrapment cases is affirmative and unacceptable conduct by law enforcement or its agent, which entices the commission of a crime. Id. (quoting Bist v. State, 35 So. 3d 936 (Fla. 5th DCA 2010); Schwartz v. State, 125 So. 3d 946 (Fla. 4th DCA 2013)). Notably, an alleged failure to properly supervise a confidential informant, standing alone, does not amount to objective entrapment. State v. Lopez, 908 So. 2d 484, 485 (Fla. 4th DCA 2005).

In order to establish the defense of duress under Florida law, a defendant must prove the following: (1) the defendant reasonably believed a danger existed that was not intentionally caused by himself; (2) the danger threatened significant harm to himself or

a third person; (3) the threatened harm must have been real, imminent, or impending; (4) the defendant had no reasonable means to avoid the danger except by committing the offense or any lesser included offense; (5) the offense or any lesser included offense must have been committed out of duress to avoid the danger; and (6) the harm that the defendant avoided must outweigh the harm caused by committing the offense or any lesser including offense. Mickel v. State, 929 So. 2d 1192, 1196 (Fla. 4th DCA 2006) (citations omitted). Notably, a threat of future harm is not sufficient to prove the defense of duress. Id.

Here, the circuit court made a factual finding that counsel's decision to utilize a duress defense over an entrapment defense was sound strategy. Lewis has not presented evidence, much less clear and convincing evidence, to rebut the state court's factual finding on this matter. See 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Indeed, review of the record supports the circuit court's conclusion.

As pertinent to an objective entrapment defense, the record reflects that Lewis became addicted to pain medications after losing his arm. Resp. Ex. L at 267-69. At trial, Lewis testified that he sought out Hall, through a friend, in order to get oxycodone fronted to him. Id. 270-72. Lewis intended to repay once he got his prescription. Id. When it came time for Lewis to pick up his next prescription, Hall went with him to ensure that he, Hall, got the pills Lewis owed him. Id. at 271-80. Lewis' prescription ended up being less than he normally received, which according to Lewis made Hall angry. Id. at 276, 282-84. Lewis testified that Hall threatened him and his family if Lewis did not agree to sell the pills he

obtained with his prescription. Id. at 283-86. Lewis' friend, Heather Kaminsky, also testified at trial and her testimony generally supported Lewis' description of the events. Id. at 136-59.

Hall testified at trial as well, according to Hall, Lewis called him requesting a ride to fill his prescription. Id. at 241. Along the way, Lewis said he needed to make some money to pay bills and asked Hall if he wanted to buy some of his prescription pills. Id. Hall declined but told him he knew somebody that would buy them from him, at which point he called Forsyth and set up the controlled buy between Lewis and the undercover officer. Id. Forsyth testified that he had no intent on conducting a controlled buy that day until Hall called him early that morning and told Forsyth he had a man who wanted to sell pills. Id. at 177-81. Hall and Forsyth then set up a plan to conduct a controlled buy between Lewis and an undercover officer. Id. at 181-83. According to Forsyth, due to the short notice and the fact that Hall was currently with Lewis, he could not search or wire Hall prior to the deal. Id. at 183-84, 207-08.

The record demonstrates that, contrary to Lewis' assertions in his Petition, Lewis first initiated contact with Hall and that the pills he sold were Lewis' own prescription pills. Neither Hall nor law enforcement gave Lewis the money or drugs. Additionally, Hall and Forsyth's testimony contradict Lewis' claims and the Court takes particular note of a letter Lewis wrote while he was in jail awaiting trial. That letter, which Lewis gave to an inmate who was getting out of jail to deliver to Lewis' girlfriend, instructed Lewis' girlfriend on how to testify based on who else would possibly testify at trial. Id. at 111-13, 368-74. The letter demonstrated Lewis' attempt to manipulate witness testimony and severely crippled his credibility at trial. Moreover, the controlled buy was recorded, and the video and audio

were played for the jury. Id. at 53-57. During the transaction, Lewis can be seen and heard counting the pills and asking the undercover officer if he was a cop. Notably, Lewis, not Hall, was the main actor during the actual drug deal, which cuts against his claim that he was merely a pawn.

In light of this record, the Court finds that Lewis has failed to demonstrate outrageous conduct on the part of either law enforcement or Hall. Moreover, even assuming Hall conspired in the manner Lewis alleges, Lewis has demonstrated at most that Hall went rogue, which would take Hall out of the scope of his role as an agent for law enforcement. See Osorio v. State, 186 So. 3d 601, 606 (Fla. 4th DCA 2016) (noting that for an informant to be considered an agent of the State, the State must be aware of and acquiesce to the conduct). Here, beyond Lewis' conclusory allegations, the record is devoid of any evidence that Hall's handlers knew of this alleged improper behavior. As such the record fails to support a finding that an entrapment defense would have been a good option for Lewis.

Regarding the duress defense, Lewis testified at trial that when Hall returned to his home, Hall was angry, pointed a gun at him, and threatened to kill him and his family if he did not agree to sell his pills in the manner Hall wanted. Resp. Ex. L at 282-87. Accordingly, contrary to Lewis' assertions in his Petition, there was evidence to support an imminent threat. Additionally, Lewis testified that Hall had a gun and threatened the use of it, id., which could have established that Lewis did not have reasonable means to avoid the danger or threat. In light of this record, the Court finds that between the two defenses, a duress defense presented Lewis with the best opportunity for success. Therefore, his counsel was not ineffective for making a strategic decision to pursue a

duress defense instead of an entrapment defense. See Knight, 936 F.3d at 1340. As such, the Court finds Lewis is not entitled to relief on his claim in Ground Three.

### D. Ground Four

Lastly, Lewis contends that his trial counsel was ineffective for failing to call John Merchant, Travis Smith, Chris Middleton, and a records custodian from "Extended Care Pharmacy" as witnesses. Petition at 44-47. According to Lewis, he called Merchant, Smith, and Middleton a week before his arrest to inform them that he was in fear of his life due to Hall's egregious and outrageous conduct and that each of these witnesses would have helped substantiate an entrapment defense. Id. at 44, 46-47. Lewis asserts that Merchant was the first law enforcement officer to utilize Hall as a confidential informant and would testify about how Hall and Williams "manipulated the Petitioner and others to participate in his and CI Hall's Oxycodone Trafficking Operation with 'down south' doctor Mark Sachs; which would have in turn proved the affirmative defense of entrapment . . . ." Id. at 46. As to Smith, Lewis maintains that Smith would have been able to establish that Lewis' phone call to Merchant a week before his arrest helped initiate the investigation, arrest, and conviction of Dr. Sachs. Id. Lewis avers that Middleton would have been able to corroborate the testimony of Merchant and Smith. Id. Regarding Extended Care Pharmacy, Lewis contends that calling a records custodian from the pharmacy would have established that his counsel, Mr. Henderson, "had [but failed to use] a copy of the prescription (and the receipt for the over $900.00 cash payment thereof) that 'Sponsors' Hall and Williams paid . . . ." Id. at 46.

Respondents contend that Lewis exhausted this claim as to witnesses Merchant, Smith, and Middleton, but that Lewis failed to exhaust this claim as to the records

custodian from Extended Care Pharmacy. Response at 10-12. Lewis counters in his Reply that he did exhaust the claim as to the records custodian because he raised it in his Rule 3.850 Motion and raised the denial of this claim with the Fifth DCA. Reply at 31-33. The record reflects that in Lewis' Rule 3.850 Motion, he raised as ground three a claim that his counsel was deficient for failing to call three witnesses, Merchant, Smith, and Middleton. Resp. Ex. AA at 22-24. However, Lewis also alleged in this same ground that he advised his counsel to subpoena the records custodian of Extended Care Pharmacy to provide evidence that Hall personally filled Lewis' prescription. Id. at 24. According to Lewis, counsel acted on that request, "but then provided ineffective assistance when he struck the records custodian at Extended Care Pharmacy in Hastings, Florida as a witness just prior to trial starting." Id. Lewis went on to make a claim of prejudice based on the purported testimony of each of the four witnesses. Id. The circuit court did not specifically address Lewis' claim as to counsel's alleged failure to call the records custodian, Resp. Ex. DD at 4, and Lewis raised this claim again in his initial brief on appeal, pointing out that the circuit court failed to address the merits of this sub-claim. Resp. Ex. JJ at 33-34. Based on this record, the Court finds Lewis properly exhausted his claim as to counsel's alleged deficiency in failing to call a record custodian from Extended Care Pharmacy. See Ogle v. Johnson, 488 F.3d 1364, 1369 (11th Cir. 2007) ("A habeas petitioner exhausts available state remedies when he fairly presents his claim for a state remedy even if the state never acts on his claim."). However, because the state court did not adjudicate this portion of the claim on the merits, the Court must conduct a de novo review of this sub-claim instead of a deference analysis. See Mason v. Allen, 605 F.3d

1114, 1119 (11th Cir. 2010) ("When, however, a claim is properly presented to the state court, but the state court does not adjudicate it on the merits, we review de novo.").

In denying relief on this claim as to Merchant, Smith, and Middleton, the circuit court wrote:

> Here, the Court acknowledges that there [sic] testimony would be hearsay and inadmissible and that Trial Counsel seemed to recognize the evidentiary dilemma when he announced that he would not call witness John Merchant because he took a phone call from the Defendant and was not certain he could get it in. Neither prong of Strickland [sic] has been met here, Ground Three is denied.

Resp. Ex. DD at 4 (record citations omitted). The Fifth DCA per curiam affirmed the denial of relief on this claim. Resp. Exs. LL; OO.

To the extent that the Fifth DCA decided the claim on the merits as is relates to witnesses Merchant, Smith, and Middleton, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Lewis is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim as to Merchant, Smith, and Middleton is not entitled to deference, the claim is without merit. Likewise, upon conducting a de novo review of the claim as to the records custodian from Extended Care Pharmacy, Lewis is not entitled to relief. "'Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that federal courts will

seldom, if ever, second guess.'" Knight, 936 F.3d at 1340 (quoting Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).

Moreover, the record reflects that at a May 23, 2013 hearing, counsel advised that he would not be calling Smith, Middleton, Merchant, or a records custodian from Extended Care Pharmacy as witnesses and explained his reasons. Resp. Ex. K at 24-25. Concerning Merchant, counsel stated "right now I'm not intending on calling him. He's -- he took a phone call from the defendant, and I'm not certain I can -- will be able to get that in." Id. at 24. As to Extended Care Pharmacy, counsel represented that "I do not anticipate on calling them. That had to do with some other -- other portion of this case." Id. The record reflects counsel did not think the testimony he wanted to get from Merchant would be admissible and did not think the information from Extended Care Pharmacy was relevant. Moreover, in his Petition, Lewis merely speculates that these witnesses would corroborate his defense theory, but speculation is insufficient to establish an ineffective assistance of counsel claim. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). Moreover, the Court finds no error in the circuit court's conclusion that Merchant, Middleton, and Smith's purported testimony would constitute inadmissible hearsay. Lastly, the Court concludes that what occurred with Dr. Sachs after the controlled-buy in this case is irrelevant to the offense Lewis committed and his defense of entrapment as to this specific offense. While Lewis may feel he has unearthed a large-scale conspiracy, that does not mean it would be admissible and relevant in his criminal proceeding. For the forgoing reasons, the Court will not second guess counsel's strategic decisions here. See Knight, 936 F.3d at 1340.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Lewis seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Lewis "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Lewis appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of May, 2020.


MARCIA MORALES HOWARD
United States District Judge


Jax-8

C:      Elliott Arthur Lewis #118062
        Kaylee Tatman, Esq.